# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

AHMED SALAU,                              )

                                     )

                Plaintiff,              )

                                     )

        v.                          )      Case No. 2:14-cv-04326-SRB

                                     )

BRADY DENTON, et al.,              )

                                     )

               Defendants.       )

## ORDER

Before the Court are five Motions to Dismiss filed by Defendants The Curators of the University of Missouri Identified as University of Missouri – Columbia (Doc. #30), The Curators of the University of Missouri (Doc. #48), Donnell Young (Doc. #57), Mark Lucas (Doc. #55), and Brady Deaton (Doc. #71). For the reasons discussed below, Defendants' Motions to Dismiss are granted.

## I.      BACKGROUND

Plaintiff Ahmed Salau brings this action against The Curators of the University of Missouri ("University"); Brady Deaton, the former Chancellor of the University; Mark Lucas, the Director of the Office of Student Life; Donnell Young, the Senior Coordinator for the Office of Student Conduct; and two other named defendants for claims of gender discrimination and civil rights violations in connection with the University's policies and procedures for handling student misconduct. In the Amended Complaint, Plaintiff alleges that on September 25, 2012, while enrolled at the University of Missouri, he was notified that he was under investigation for various code of conduct violations, including "nonconsensual sexual behavior, giving alcohol to a person in a drunken state and invasion of privacy." (Doc. #32, ¶¶60, 62). Following the

notification, Plaintiff retained counsel, Mr. Clark Jones, to assist him with this matter, and to represent him at the formal hearing. Id. at ¶¶67, 68. Plaintiff states he received a letter on October 3, 2012, informing him that he was "permanently separated from the University of Missouri." Id. at ¶66. On October 9, 2012, Plaintiff asserts that as a result of the communication between him and Defendant Young regarding Young's "vendetta" against Plaintiff, Defendant Young added additional code of conduct violations. Id. at ¶69. On November 7, 2012, the disciplinary panel granted Plaintiff's request for a continuance of the formal hearing. Id. at ¶72. Plaintiff alleges additional violations were then added on November 12, 2012, "due to threaten/pushy behavior towards women in the Women's and Gender Studies Program (WGST), the WGST had to rethink its pedagogical practice to limit … contact with other students in the program," "had to reassign TAs to ensure that only the most experienced TAs teach in Mr. Salau's classes," and that "[Mr. Salau] made a student feel threaten [sic] for her health and safety." Id. at ¶79. On November 13, 2012, Plaintiff alleges "Defendant Young refused to provide names, addresses, and phone numbers for any witnesses in any and all allegations and points out that the students' rights in student conduct proceedings do not include the right to have access to names, addresses and phone numbers." Id. at ¶80.

On November 28, 2012, Plaintiff dismissed his attorney and asked him to seek a continuance so that he could obtain replacement counsel. Id. at ¶¶84, 85. On the day of the formal hearing, Plaintiff arrived at the panel room to request another continuance so he could obtain counsel and found Mr. Jones present in the room. Id. at ¶86. After speaking with Plaintiff outside the room at Plaintiff's request, Mr. Jones told the panel that he was discharged by Plaintiff. Id. at ¶¶87, 88. Plaintiff's request for a "continuance to safeguard his 5th Amendment rights" was denied by the panel. Id. at ¶89. Plaintiff did not participate in the hearing and "he

2

took his respectful exit upon which a finding of expulsion was made." Id. at ¶90. The decision of the panel was affirmed upon appeal, and Plaintiff was not allowed to take his final exams. Id. at ¶¶94, 95.

On July 12, 2015, Plaintiff filed his Amended Complaint asserting twelve causes of action for violation of: (1) Title IX – Discrimination Based on Sex against the University; (2) Title IX – Hostile Education Environment against the University; (3) 42 U.S.C. § 1985 – Civil Conspiracy against Defendants Young, Kingsbury and Spalding; (4) 42 U.S.C. § 1986 – Failure to Intervene in Civil Conspiracy against Defendant Lucas and Deaton; (5) 42 U.S.C. § 1983 – Violation of Due Process Rights against all defendants; (6) 42 U.S.C. § 1983 – Violation of Equal Protection against all defendants; (7) 42 U.S.C. § 1983 – Unreasonable Search and Seizure against Defendants Kingsbury and Spalding; (8) 42 U.S.C. § 1983 – Self-Incrimination against Defendant Young; (9) 42 U.S.C. §1983 – Free Speech against Defendant Young; (10) Vacatur of the Arbitrator's Decision against Defendants Deaton, Lucas and Young; (11) Estoppel and Reliance against Defendant Deaton, Lucas & Young; and (12) Injunctive and Declaratory Judgment.

Four named defendants filed motions to dismiss Plaintiff's Amended Complaint on the grounds that the complaint fails to state a claim upon which relief may be granted. Plaintiff responded to the motion filed by The Curators of the University of Missouri Identified as University of Missouri – Columbia, but, despite this Court granting four extensions of time to file his response, Plaintiff failed to respond to the remaining motions.

## II.    LEGAL STANDARD

Defendants bring their Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which states a claim may be dismissed for "failure to state a claim upon which relief can be granted."

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (internal citations omitted); Zink v. Lombardi, 783 F.3d 1089, 1098 (8th Cir.) cert. denied, 135 S. Ct. 2941 (2015); Hamilton v. Palm, 621 F.3d 816, 817 (8th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Ash v. Anderson Merchs., LLC, No. 14–3258, 2015 WL 4978701, at *1 (8th Cir. 2015).

The court "must take all factual allegations [made by the plaintiff] as true when considering a motion to dismiss." Great Plains Trust Co. v. Union Pac. R.R. Co., 492 F.3d 986, 995 (8th Cir. 2007); Data Mfg., Inc. v. United Parcel Service, Inc., 557 F.3d 849, 851 (8th Cir. 2009) (noting "[t]he factual allegations of a complaint are assumed true and construed in favor of the plaintiff, even if it strikes a savvy judge that actual proof of those facts is improbable"). However, factual allegations which represent "legal conclusions or formulaic recitation of the elements of a cause of action . . . may properly be set aside." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Iqbal, 556 U.S. at 677) (internal citations omitted). The pleading standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555) (internal quotations omitted); Zink, 783 F.3d at 1098 (8th Cir. 2015) (stating a pleading must offer more than "naked assertions that are devoid of further factual enhancement") (quoting Twombly, 550 U.S. at 570) (internal quotations omitted); see, e.g., Ritchie v. St. Louis Jewish Light, 630 F.3d 713, 717 (8th Cir. 2011) (finding the district court

appropriately granted a motion to dismiss where "facts pleaded in [plaintiff's] complaint [did] not permit [the court] to infer more than the mere possibility of misconduct").

The "evaluation of a complaint upon a motion to dismiss is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Braden, 588 F.3d at 594 (internal citations omitted). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Id.; see also Zoltek Corp. v. Structural Polymer Group, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (noting the court's task "is to review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation").

## III.    DISCUSSION

Defendants The Curators of the University of Missouri ("University"), Brady Deaton, Mark Lucas, and Donnell Young seek dismissal of all twelve counts set forth in Plaintiff's Amended Complaint. The Court will address each count separately.

### A.  Count 1: Title IX – Sex Discrimination (Against Defendant University)

Plaintiff alleges that he was wrongly found to have committed student conduct violations in his disciplinary proceeding because of the University's gender bias. Defendant University argues Plaintiff fails to plead a plausible claim of gender bias based upon a Title IX erroneous outcome theory.

Title IX states "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . [.]" 20 U.S.C. § 1681(a); see also Wolfe v. Fayetteville, Arkansas Sch. Dist., 648 F.3d 860, 864 (8th Cir. 2011) (emphasizing "per the language of Title IX, [the] acts of discrimination must be on the basis of

sex") (internal quotations omitted). A plaintiff may assert a claim under Title IX based upon an erroneous outcome theory, in which "the plaintiff attacks the university disciplinary proceeding on grounds of gender bias by arguing that the plaintiff was innocent and wrongly found to have committed an offense." Sahm v. Miami Univ., No. 1:14-CV-698, 2015 WL 2406065, at *3 (S.D. Ohio May 20, 2015); (citing Yusuf v. Vassar Coll., 35 F.3d 709, 715 (2d Cir. 1994)). To allege an erroneous outcome theory, Plaintiff must plead: "(1) facts sufficient to cast doubt as to the accuracy of the outcome of the disciplinary proceeding and (2) causation." Sahm, 2015 WL 2406065, at *4. "Wholly conclusory allegations [do not] suffice for purposes of Rule 12(b)(6)." Yusuf, 35 F.3d at 715.

Plaintiff unquestionably fails to sufficiently plead causation by "alleg[ing] particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." Yusuf, 35 F.3d at 715; Doe v. Columbia Univ., No. 14-CV-3573, 2015 WL 1840402, at * 9 (S.D.N.Y. Apr. 21, 2015). Sufficient factual allegations include "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that . . . tend to show the influence of gender." Sahm, 2015 WL 2406065, at *4 (finding plaintiff's "factual allegations in the Amended Complaint [did] not satisfy any of these traditional means of demonstrating gender bias."); see, e.g., Sterrett v. Cowan, 85 F. Supp. 3d 916, 937 (E.D. Mich. 2015) (refusing to allow plaintiff to amend his Title IX claim where he failed to identify any female student, other than the complainant, who was treated more favorably than he was treated). "One case by an individual who was subjectively dissatisfied with the result of a disciplinary proceeding does not constitute a pattern of decisionmaking." Id. at *5 (citing Mallory, 76 F. App'x at 640) (internal quotation omitted).

Even if the University treated the female student more favorably than the Plaintiff, during the disciplinary process, "the mere fact that Plaintiff is male and [the alleged victim] is female does not suggest that the disparate treatment was because of Plaintiff's sex." Doe, 2015 WL 1840402, at *12. "[D]emonstrating that a university official is biased in favor of the alleged victims of sexual assault claims, and against the alleged perpetrators, is not the equivalent of demonstrating bias against male students." Sahm, 2015 WL 2406065, at *4; see, eg., Doe, 2015 WL 1840402, at *9 (finding Plaintiff's allegation "that males at [the University] accused of sexual misconduct are invariably found guilty, regardless of the evidence" too conclusory to survive a motion to dismiss). "Allegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss." Yusuf, 35 F.3d at 715.

Plaintiff does not set forth particularized facts sufficient to suggest that gender bias was a motivating factor for an erroneous disciplinary decision—namely, that establish University officials made comments that demonstrate gender-biased animus or that there were patterns of decision-making that tended to show the influence of gender. Plaintiff's allegation that the "male respondents in sexual misconduct cases at [the University] are discriminated against based solely on their sex" does not establish a pattern of decisionmaking that tends to show gender bias, because Plaintiff only points to one case—his own. (Doc. #32, ¶137); See Sahm, 2015 WL 2406065, at *4. Plaintiff likewise fails to identify any female student, other than the female student involved in Plaintiff's disciplinary hearing and "female students like [her]," who was treated more favorably than he was treated. (Doc. #32, ¶127). Although Plaintiff mentions women in his allegation, he does not indicate who these women were, whether they requested

evidence or what they were provided for the hearing, or whether they were charged with similar violations.

Plaintiff's assertions, "devoid of further factual enhancement" are insufficient to state a claim to relief in a pleading. See Zink, 783 F.3d at 1098 (stating that in a pleading, "it is not sufficient to tender naked assertions that are devoid of further factual enhancement") (internal quotations omitted). Conclusory allegations without supporting facts of gender bias, like Plaintiff's assertion that "male respondents in sexual misconduct cases . . . are invariably found guilty, regardless of the evidence," are insufficient to survive a motion to dismiss. (Doc. #32, ¶137). Without particularized allegations suggesting that gender bias was a motivating factor for an erroneous disciplinary decision, Count 1 is dismissed.

### B. Count 2: Title IX – Hostile Education Environment (Against Defendant University)

Plaintiff alleges that he "faced a hostile education environment when he was discriminated on the basis of his sex," and "when he was subjected to less favorable treatment than other students" having pending code of conduct violations and other students generally at the University. (Doc. #32, ¶¶141–144). Defendant claims that the Plaintiff fails to show the University discriminated against him on the basis of gender.

To establish a hostile environment harassment claim in the educational context, Plaintiff must show: "1) that [he] belongs to a protected group; 2) that [he] was subject to unwelcome sexual harassment; 3) that the harassment was based on sex; 4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of [his] education and create an abusive educational environment; and 5) that some basis for institutional liability has been established." Kinman v. Omaha Pub. Sch. Dist. (Kinman I), 94 F.3d 463, 467–68 (8th Cir. 1996) rev'd on other grounds by Kinman v. Omaha Pub. Sch. Dist. (Kinman II), 171 F.3d 607, 610 (8th

Cir. 1999). The key question under the third element—whether the harassment was based on sex—"is whether 'members of one sex are exposed to disadvantageous terms or conditions [of code of conduct violations] to which members of the other sex are not exposed.'" Id. (quoting Quick v. Donaldson Co., 90 F.3d 1372, 1378 (8th Cir. 1996)) (extending the Title VII employment standard to show the harassment was based on gender to the educational context). To determine whether discrimination was based on sex, "Plaintiff must show that the harasser treated males and females differently in a mixed gender environment or that the harassment is motivated by sexual desire or special attention to plaintiff as a male." Elmahdi v. Marriott Hotel Servs., Inc., 339 F.3d 645, 654–55 (8th Cir. 2003); see also McCown v. St. John's Health Sys., 349 F.3d 540, 543 (8th Cir. 2003).

To support his hostile educational environment claim, Plaintiff pleads "he was subjected to less favorable treatment than the feminine students who faced code of conduct violations in that he was never provided any names of witnesses or other evidence he requested" and that the University "encourage[ed] an atmosphere [where] female students saw male students as potential 'scapegoats' in the war on men." (Doc. #32, ¶¶141, 146). Plaintiff fails to establish the third element because he does not allege that members of his gender generally are exposed to disadvantageous terms regarding code of conduct violations compared to women. See Elmahdi, 339 F.3d at 654–55. Even more broadly, Plaintiff does not plead facts that show the University imposed less favorable treatment on males outside of his disciplinary proceeding. See Id. Instead, Plaintiff alleges only he experienced disadvantageous treatment in his particular disciplinary proceeding. The University's policies and disciplinary hearing procedures apply to each student, regardless of gender, if he or she commits a code of conduct violation.

Plaintiff's allegations fail to indicate that he was sexually harassed on the basis of his gender, as opposed to experiencing harassment because he was believed to have sexually assaulted another student. Thus, Count 2 must be dismissed.

### C. Count 3: 42 U.S.C. § 1985 – Civil Conspiracy (Against Defendant Young)

Plaintiff alleges Defendant Young and two other named defendants were involved in a civil conspiracy against him in order to violate a number of Plaintiff's constitutionally guaranteed rights. Defendant Young claims the Plaintiff fails to adequately plead essential elements of a civil conspiracy claim because Plaintiff cannot establish a class-based animus behind the alleged conspirators' actions. Defendant Young also asserts Plaintiff's complaint does not meet the particularity requirement a conspiracy claim demands.

In order to prove the existence of a civil rights conspiracy under § 1985(3), the Plaintiff must prove, among other factors, "(1) that the defendants did conspire, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or equal privileges and immunities under the laws." Davis v. Jefferson Hosp. Ass'n, 685 F.3d 675, 684 (8th Cir. 2012) (citing 42 U.S.C. § 1985(3) (2015)) (internal quotations omitted). The second element—the "purpose" element—requires "that some racial, or perhaps otherwise class-based, invidiously discriminatory animus lay behind the conspirators' action." Dornheim v. Sholes, 430 F.3d 919, 924 (8th Cir. 2005); see also Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 269 (1993) (explaining the word "class" for purposes beyond race . . . unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors"). "[T]he 'animus' requirement . . . demand[s] . . . at least a purpose that focuses upon [the class] by reason of their sex." Id.; see also Dornheim, 430 F.3d at 924 (rejecting claim "that women in general, and victims of domestic

violence in particular, compose classes subject to invidious discrimination" for § 1985 purposes); Moore v. City of Desloge, Mo., No. 4:08CV1200-DJS, 2009 WL 367705, at *5 (E.D. Mo. Feb. 11, 2009) aff'd, 647 F.3d 841 (8th Cir. 2011) (finding "[p]laintiff's failure to allege a racial or class-based animus serve[d] as a sufficient basis to dismiss plaintiff's . . . § 1985(3) claim").

Plaintiff generally states the Defendant's class-based animus is "towards male respondents in sexual misconduct cases." (Doc. #32, ¶137). However, as mentioned previously in Count 2, Plaintiff fails to sufficiently allege that males in sexual misconduct cases are subject to discrimination by reason of their gender. Without more facts, Plaintiff does not show that the University had "at least a purpose [to] focus[] upon [male respondents in sexual misconduct cases] by reason of their sex." Each student is subject to the University's disciplinary hearing policies and procedures if he or she commits prohibited conduct.

Further, "[a] conspiracy claim . . . requires allegations of specific facts tending to show a 'meeting of the minds' among the alleged conspirators." Murray v. Lene, 595 F.3d 868, 870 (8th Cir. 2010); Rogers v. Bruntrager, 841 F.2d 853, 856 (8th Cir. 1988); Brown v. Dills, No. 05-4414-CV-C-NKL, 2007 WL 148851, at *3 (W.D. Mo. Jan. 12, 2007). "[T]he plaintiff must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." Davis, 685 F.3d at 684. "Conclusory allegations of conspiracy fail to state a claim." Brown, 2007 WL 148851, at *3 (citing Snelling v. Westhoff, 972 F.2d 199, 200 (8th Cir. 1992)); see, e.g., Quintero Cmty. Ass'n Inc. v. F.D.I.C., 792 F.3d 1002, 1011 (8th Cir. 2015) (holding that "conclusory and speculative assertions that an agreement existed between the [Defendants] to accomplish vaguely pleaded torts" was insufficient to support a civil conspiracy claim).

Plaintiff's complaint states Defendants "violated [Plaintiff's § 1985 right] when they met, had a meeting of the minds, and reached an agreement" and by "communicating with each other their plans to charge [Plaintiff] with more Code of Conduct violations for signing up for a Womens and Gender Studies Minor." (Doc. #32, ¶¶152, 154). Plaintiff's allegations represent the type of "naked assertions that are devoid of factual enhancement" and "formulaic recitation of the elements of a cause of action" the 12(b)(6) pleading standard prohibits. Braden, 588 F.3d at 594 (quoting Iqbal, 556 U.S. at 677); Zink, 783 F.3d at 1098. Plaintiff does not mention the scope of the alleged conspiracy, the role of the Defendants in the conspiracy, or when and how the conspiracy operated. Plaintiff's conclusion that Defendants "had a meeting of the minds, and reached an agreement," without specific factual development, fails to state a claim on which relief may be granted. As a result, Count 3 will be dismissed.

### D. Count 4: 42 U.S.C. § 1986 – Failure to Intervene in Civil Conspiracy (Against Defendants Deaton and Lucas)

Plaintiff asserts a claim against Defendants Deaton and Lucas for failure to intervene in a civil conspiracy under 42 U.S.C. § 1986. Plaintiff alleges Defendants failed "to exercise their power over Defendants Young, Kingsbury, and Spalding to prevent the civil conspiracy against [Plaintiff]." (Doc. #32, ¶161). Defendants argue Plaintiff cannot bring a §1986 claim because Plaintiff fails to allege a conspiracy based on 42 U.S.C. § 1985.

"[Title] 42 U.S.C. § 1986, a companion statute to § 1985, allows an action against a party who knows that a § 1985 deprivation will occur, has the power to prevent it, and fails to do so." Barnes v. Simmon, No. 4:14-CV-1989 RLW, 2015 WL 1800532, at *2 (E.D. Mo. Apr. 16, 2015). "[I]n order to state a claim for a § 1986 violation, Plaintiff must first state a claim for a § 1985 violation." Rodgers v. Curators of Univ. of Missouri Sys., No. 14-3832, 2015 WL 5254942 (8th Cir. Sept. 10, 2015). Thus, "[a] [§ 1986 claim] must be predicated upon a valid § 1985

claim." <u>Barstad v. Murray Cnty.</u>, 420 F.3d 880, 887 (8th Cir. 2005); <u>see e.g.</u>, <u>Jensen v. Henderson</u>, 315 F.3d 854, 863 (8th Cir. 2002) (finding "[b]ecause the district court properly dismissed [Plaintiff's] § 1985 claims, it also correctly dismissed [Plaintiff's] § 1986 claims").

This Court dismissed Plaintiff's § 1985 claim for civil conspiracy in Count 3. Because Plaintiff fails to allege a conspiracy actionable under §1985, this necessarily means he cannot state a claim under §1986. Thus, Count 4 will be dismissed.

### E.  Count 5: 42 U.S.C. § 1983 – Violation of Due Process Rights (Against All Defendants)

Plaintiff asserts a claim against Defendants for a violation of his Fourteenth Amendment Due Process rights. Plaintiff claims "Defendants violated Plaintiff's rights to due process under the law when … Defendant Young charged him with additional conduct violations after Ahmed complained he was being persecuted because of [the female student's] family's influence, when Defendant Young refused to give him witness names, addresses and phone numbers to conduct due diligence checks, when he charged Ahmed with 'fictitious' student conduct violations that were never recognized as violations before Ahmed's matter, when Defendants Lucas and Deaton did absolutely nothing when they found out that Defendants Kingsbury, Spalding, and Young were violating Ahmed's constitutionally guaranteed rights, [and] when Defendant Deaton upheld all of the fraudulent results of the constitutionally infirmed student conduct process among other acts that will be revealed in discovery." (Doc. #32, ¶165). Although Plaintiff fails to identify whether his claim is based on procedural due process or substantive due process, Defendants Young, Lucas and Deaton assert that Plaintiff's claim fails under both theories. However, Defendants each argue, as an initial matter, that they are entitled to qualified immunity to Plaintiff's claims under § 1983.

Qualified immunity shields state officials from civil liability when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Holloway v. Reeves, 277 F.3d 1035, 1037 (8th Cir. 2002). "The purpose of qualified immunity is to allow public officers to carry out their duties as they believe are correct and consistent with good public policy, rather than acting out of fear for their own personal financial well being." Sparr v. Ward, 306 F.3d 589, 593 (8th Cir. 2002). "Toward this end, the rule has evolved that an official performing discretionary functions will generally be immune from liability unless a reasonable person in his position would have known his actions violated clearly established law." Id. (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "An official loses immunity if the law he violated was clearly established at the time of the violation, and the applicability of the law to his particular action was evident." Id. "To prevail at this stage of the proceedings, defendant[] must show that [he is] entitled to qualified immunity on the face of the complaint." Bradford v. Huckabee, 394 F.3d 1012, 1015 (8th Cir. 2005) (citing Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996), cert. denied, 519 U.S. 1149 (1997)).

"[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all." Bradford, 394 F.3d at 1015 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 841 n. 5 (1998)). Plaintiff alleges in his complaint that Defendants violated his constitutional due process rights under the 14th Amendment. To overcome qualified immunity, the complaint must plausibly plead that Defendants violated Plaintiff's due process rights. Though not specified in the complaint, the Court will address both procedural due process and substantive due process.

### a. Procedural Due Process

The Fourteenth Amendment of the United States Constitution provides that "[n]o state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "To establish a procedural due process claim pursuant to § 1983, plaintiffs must establish three elements: (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest." Hahn v. Star Bank, 190 F.3d 708, 716 (6th Cir. 1999) (cited with approval in Vaughn v. Ruoff, 304 F.3d 793, 796 (8th Cir. 2002)). Mulvenon v. Greenwood, 643 F.3d 653, 657 (8th Cir. 2011) (quoting Davenport v. Univ. of Ark. Bd. of Trs., 553 F.3d 1110, 1114 (8th Cir. 2009)). The Eighth Circuit has "indicated that procedural due process must be afforded a student on the college campus 'by way of adequate notice, definite charge, and a hearing with opportunity to present one's own side of the case and with all necessary protective measures.'" Jones v. Snead, 431 F.2d 1115, 1117 (8th Cir. 1970) (quoting Esteban v. Central Missouri State Coll., 415 F.2d 1077, 1089 (8th Cir. 1969)). The Eighth Circuit has also "cautioned 'that it is not sound to draw any analogy between student discipline and criminal procedure.'" Id.

Here, as demonstrated by the complaint, Plaintiff received notice of the codes of conduct violations asserted against him prior to the formal hearing. (Doc. #32, ¶¶61, 62, 79). Plaintiff received notice that a formal hearing was scheduled and, despite one continuance at Plaintiff's

request, the hearing was in fact conducted before the student conduct hearing panel. Id. at ¶¶61, 68, 72, 86–90. At the formal hearing, Plaintiff requested a continuance to "safeguard his 5th Amendment rights" and the request was denied. Id. at ¶¶84, 89. Following the denial of Plaintiff's request, Plaintiff refused to take part in the disciplinary hearing and voluntarily exited the room. Id. at ¶90. The complaint asserts that the only purpose for the last continuance requested by Plaintiff was to allow him an opportunity to obtain counsel for 5th Amendment purposes. Id. at ¶¶84, 89. Plaintiff was expelled from the University and was allowed the opportunity to appeal the panel's decision. Id. at ¶¶94–98.

The complaint demonstrates that Plaintiff was provided sufficient due process prior to being permanently expelled from the University. Plaintiff was afforded adequate procedural rights by Defendants by way of notice of the charges, identification of the violations charged, and an opportunity to present his case even though he refused to participate. See Jones, 431 F.2d at 1117. Thus, Plaintiff has failed to sufficiently plead a procedural due process violation. Moreover, Plaintiff has failed to plead a clearly established right regarding the procedural requirements of a student disciplinary hearing that was violated by Defendants and that Defendants would reasonably have been expected to know. See Holloway, 277 F.3d at 1037. Thus, Plaintiff's claim for a violation of his 14th Amendment rights is dismissed for failure to state a claim and barred due to Defendants' qualified immunity.

### b. Substantive Due Process

"The Fourteenth Amendment's guarantee of substantive due process prevents the government from engaging in 'conduct that is so outrageous that it shocks the conscience or otherwise offends judicial notions of fairness, or is offensive to human dignity' or 'interferes with rights implicit in the concept of ordered liberty.'" Riley v. Hessenflow, No. 11-04253-CV-

16

C-NKL, 2013 WL 139650, at *3 (W.D. Mo. Jan. 10, 2013) (quoting Moran v. Clarke, 296 F.3d 638, 643 (8th Cir. 2002)). "To establish a violation of substantive due process rights by [a state] official, a plaintiff must show (1) that the official violated one or more fundamental constitutional rights, and (2) that the conduct of the executive official was shocking to the 'contemporary conscience.'" Flowers v. City of Minneapolis, Minn., 478 F.3d 869, 873 (8th Cir. 2007) (quoting Cnty of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)). "Substantive due process is generally limited to matters relating to a fundamental right, i.e., marriage, family, procreation, right to bodily integrity." Peterson v. N. Dakota ex rel. N. Dakota Univ. Sys., 240 F. Supp. 2d 1055, 1062 (D.N.D. 2003); see also Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).

Here, Plaintiff's claim fails to meet the standard required of a substantive due process claim. Plaintiff has failed to allege a fundamental constitutional right violated by Defendants. As explained by Defendants, a "right to a public college education" is not deemed a fundamental right for purpose of substantive due process. Hill v. Bd. Of Trs. of Michigan State Univ., 182 F. Supp. 2d 621, 627 (W.D. Mich. 2001); see also Tobin v. Univ. of Maine Sys., 59 F. Supp. 2d 87, 90 (D. Me. 1999) ("pursuit of an education is not a fundamental right or liberty for purposes of substantive due process"); Coates v. Natale, 409 F. App'x 238, 240 (11th Cir. 2010) (student's "substantive due process claim fails because she failed to identify any fundamental rights that were violated by her expulsion from" college). In this action, Plaintiff has not shown that he has a fundamental right to a public college education to satisfy the first required element of a substantive due process claim. See Hill, 182 F. Supp. 2d at 627.

Because Plaintiff lacks a constitutionally-protected fundamental right to a public college education, he cannot establish a substantive due process violation. A reasonable person in

Defendants' positions would have no reason to believe that any of the actions taken with regard to the disciplinary process deprived Plaintiff of a clearly established constitutional or statutory right. Accordingly, Defendants are protected from liability by qualified immunity and the Court dismisses Plaintiff's 14th Amendment Due Process claim.

### F. Count 6: 42 U.S.C. § 1983 – Violation of Equal Protection (Against Defendants Deaton, Lucas, and Young)

Plaintiff asserts "Defendants violated Ahmed's rights to equal protection under the law." (Doc. #32, ¶171). Plaintiff claims the violation occurred "when Defendant Deaton treated Ahmed less favorably than other male students when he upheld the sanctions of a fatally flawed student conduct process, when Defendant Deaton refused to allow Ahmed to take the final exams he had paid for in contrast with other students who were all allowed to take their final exams, when Defendant Lucas failed to protect him from Defendant Young's cavalier, overzealous, and vindictive assault on Ahmed in contrast with his actions in other cases, [and] when Defendant Young failed to provide him with witness names, addresses, phone numbers or conduct a meaningful investigation in contrast with other cases." Id. Defendants Young, Deaton and Lucas each argue none of Plaintiff's allegations allege discrimination based on membership in a protected class, and Plaintiff should not be allowed to proceed on a "class of one" theory in a student disciplinary matter. Defendants further argue that Plaintiff fails to sufficiently plead that he was treated differently from "others similarly situated."

"The Equal Protection Clause of the Fourteenth Amendment, § 1, commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws.'" Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). "'In general, the Equal Protection Clause requires that state actors treat similarly situated people alike.'" Habhab v. Hon, 536 F.3d 963, 967 (8th Cir. 2008) (quoting Bogren v. Minnesota, 236 F.3d 399, 408 (8th Cir. 2000)). "'State actors may,

however, treat dissimilarly situated people dissimilarly without running afoul of the protections afforded by the clause.'" Id. "To establish a gender-based claim under the Equal Protection Clause, [plaintiff] must, as a threshold matter, demonstrate that [he has] been treated differently by a state actor than others who are similarly situated simply because [plaintiff] belong[s] to a particular protected class." Keevan v. Smith, 100 F.3d 644, 647-48 (8th Cir. 1996). In this action, Plaintiff fails to plead that he is a member in a protected class or group.

Alternatively, "[t]he Supreme Court recognizes … a 'class of one' equal protection claim—meaning 'the plaintiff did not allege membership in a class or group' — 'where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Robbins v. Becker, 794 F.3d 988, 995 (8th Cir. 2015) (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam)); accord Barstad v. Murray Cnty., 420 F.3d 880, 884 (8th Cir. 2005). "Unequal treatment of 'those who are entitled to be treated alike[] is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination.'" Robbins, 794 F.3d at 995 (citing Batra v. Bd. of Regents of Univ. of Neb., 79 F.3d 717, 721 (8th Cir. 1996) (in turn quoting Snowden v. Hughes, 321 U.S. 1, 8 (1944)).

The Supreme Court analyzed the applicability of the "class of one" theory and reasoned that:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 603 (2008). Defendants argue that based on the subjective and discretionary nature of student disciplinary proceedings, Plaintiff is unable to proceed on the "class of one" theory. Defendants cite to Uzoukwu v. Prince George's Cmty. Coll. Bd. of Trs. to support their assertion that a "class of one" equal protection claim in the public education context precludes this claim. No. CIV.A. DKC 12-3228, 2013 WL 4442289, at *9 (D. Md. Aug. 15, 2013). The Uzoukwu court provided examples of other courts evaluating the "class of one" theory as follows:

> A number of district court decisions have applied the reasoning used in Engquist to preclude "class of one" equal protection claims in the public education context. See, e.g., Nofsinger v. Va. Commonwealth Univ., No. 12–cv–236, 2012 WL 2878608, at *11 (E.D.Va. July 13, 2012) (because "[g]rading and assessing professionalism—especially in the graduate school context—by necessity involves a host of subjective, individualized assessments," the plaintiff could not use a "class of one" theory to challenge her dismissal from a physical therapy program by arguing that she was the only student who was precluded from retaking a clinical assignment); Smith v. Seligman Unified Sch. Dist., 664 F.Supp.2d 1070, 1078–79 (D.Ariz. 2009) (high school student could not assert a "class of one" claim by arguing that she was the only student charged with marijuana and alcohol violations to be suspended); DeFabio v. E. Hampton Union Free Sch. Dist., 658 F.Supp.2d 461, 494 (E.D.N.Y. 2009) (in dicta, observing that Engquist "would foreclose a 'class of one' claim by plaintiffs in connection with the discretionary decision by school administrators ... as to whether [the plaintiff] should have been removed from the school and disciplined").

Id.

Plaintiff's claims arise from the events surrounding the student disciplinary hearing in which Plaintiff was accused of code of conduct violations stemming from allegations of sexual misconduct with another student. Defendants were presented with the challenge of evaluating the evidence and facts to make a subjective, individualized assessment. Due to the nature of the alleged misconduct, treating similarly situated people differently than Plaintiff is an accepted consequence of the discretion granted to the University when handling student misconduct allegations. As explained in Engquist, allowing a challenge based on the arbitrary singling out of

a particular person would undermine the very discretion that the University is entrusted to exercise. 553 U.S. at 603. Because of the discretionary nature of the student disciplinary proceedings, this action is not suited for a "class of one" theory.

Furthermore, Defendants argue that Plaintiff fails to allege he was treated differently from "others similarly situated." Plaintiff sets forth allegations in comparison to "other students," "other cases" and "other campuses."(Doc. #32, ¶171). Plaintiff does not allege, with specificity, how these other students, cases and campuses compare to the instant action. Plaintiff has simply provided conclusory allegations that are not sufficient to state a plausible claim under the pleading standards of Iqbal.

Therefore, the Court finds that Plaintiff has failed to plead membership in a protected class or group to bring this action under the traditional theory and is unable to assert the action on a "class of one" theory due to the discretionary nature of student disciplinary hearings. Even if the Court found that this action was capable of being brought under one of the two theories, Plaintiff has failed to sufficiently plead that he was treated differently than "others similarly situated." Plaintiff's broad and conclusory allegations are insufficient to demonstrate an equal protection claim. As a result, Plaintiff's claim for equal protection in Count 6 is dismissed.

### G.  Count 8: 42 U.S.C. § 1983 – Self-Incrimination (Against Defendant Young)

Plaintiff alleges "Defendant Donnell Young violated [Plaintiff's] right against self-incrimination when he insisted that [Plaintiff] testify in the absence of Counsel to protect his 5th Amendment rights at the Student Conduct Hearing." (Doc. # 32, ¶183). Young notes Plaintiff had counsel present at the hearing to assist him in protecting his Fifth Amendment rights, but discharged the attorney prior to the commencement of the hearing. Defendant Young claims the hearing panel, not Young, denied Plaintiff's request for a continuance. At a minimum, Young

suggests "there was no clearly established right to counsel of which Young reasonably would have been aware," and, therefore, Plaintiff's allegations fail to overcome Young's qualified immunity. (Doc. #58, p.18).

The Eighth Circuit held, "[t]he presence of attorneys or the imposition of rigid rules of cross-examination at [an academic disciplinary] hearing for a student … would serve no useful purpose, notwithstanding that the dismissal in question may be of permanent duration." Greenhill v. Bailey, 519 F.2d 5, 9 (8th Cir. 1975). The Eighth Circuit has "cautioned 'that it is not sound to draw any analogy between student discipline and criminal procedure …'" Woodis v. Westark Cmty. Coll., 160 F.3d 435, 440 (8th Cir. 1998) (quoting Jones v. Snead, 431 F.2d 1115, 1117 (8th Cir. 1970)). However, "[i]t is not beyond doubt that students have a general right to counsel at disciplinary hearings." Hart v. Ferris State Coll., 557 F. Supp. 1379, 1386 (W.D. Mich. 1983). Though, "[t]he decisions of the courts have gone both ways." Id.

In Gorman v. Univ. of Rhode Island, a First Circuit opinion concerning a university student alleging deprivation of his constitutional right to retain counsel for a disciplinary hearing, the court explained,

> The district court rejected Gorman's contention that he was deprived of his constitutional right to retain counsel, and to cross-examine his accusers on his allegations of bias … As indicated in the district court's opinion, the weight of authority is against representation by counsel at disciplinary hearings, unless the student is also facing criminal charges stemming from the incident in question. Gorman, 646 F. Supp. at 806; see Wasson v. Trowbridge, 382 F.2d 807, 812 (2d Cir. 1967); Jaksa v. Regents of the Univ. of Michigan, 597 F. Supp. 1245, 1252 (E.D. Mich. 1984), aff'd mem., 787 F.2d 590 (6th Cir. 1986). This, however, does not preclude a student threatened with sanctions for misconduct from seeking legal advice before or after the hearings.

837 F.2d 7, 16 (1st Cir. 1988).

As identified in Hart, "[t]he decisions of the courts have gone both ways" when determining whether a right to counsel exists to protect one's Fifth Amendment rights during a

disciplinary hearing. 557 F. Supp. at 1386. Considering the lack of clear case law concerning the protection of a student's 5th Amendment right at a disciplinary hearing in conjunction with the Eighth Circuit's explanation in <u>Woodis</u>, the Court finds that Plaintiff has not met his burden to overcome Defendant Young's qualified immunity. "Qualified immunity shields a government official from liability unless his conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Burns v. Eaton</u>, 752 F.3d 1136, 1139 (8th Cir. 2014) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Plaintiff's complaint fails to allege a violation of a "clearly established statutory or constitutional right[] of which a reasonable person would have known.'" <u>Id</u>. Most importantly, the disciplinary panel did not deny Plaintiff of his general right to counsel to protect himself against self-incrimination. Rather, the panel simply denied Plaintiff's request for a continuance after he chose to dismiss the attorney present at the hearing, which had already convened.

Therefore, Defendant Young is shielded from liability, and Defendant Young's motion to dismiss Count 8 is granted.

### H.  Count 9: 42 U.S.C. §1983 – Free Speech (Against Defendant Young)

Plaintiff seeks to recover damages from Defendant Young under 42 U.S.C. § 1983 based on claims of retaliation in violation of Plaintiff's First Amendment rights. Plaintiff alleges Defendant Young "charged [Plaintiff] with additional code of conduct violations for speaking freely [to Young] about [his] selective persecution due to [the female student's] parents' wealth." (Doc. #32, ¶169). Defendant Young states the allegations asserted by Plaintiff fail to allege a plausible claim for relief because Plaintiff has only asserted conclusory allegations, and must provide more "factual enhancement" to demonstrate that he engaged in protected speech.

The First Amendment, applicable to the States through the Fourteenth Amendment, provides that "Congress shall make no law ... abridging the freedom of speech." To successfully plead a First Amendment retaliation claim, a plaintiff "must show (1) that he engaged in a constitutionally protected activity; (2) that the defendant took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated in part by [the plaintiff's] exercise of his constitutional rights." Scheffler v. Molin, 743 F.3d 619, 621 (8th Cir. 2014); see also Zutz v. Nelson, 601 F.3d 842, 848-49 (8th Cir. 2010); Okruhlik v. Univ. of Arkansas, 395 F.3d 872, 878 (8th Cir. 2005).

First, Plaintiff must plausibly plead that he engaged in a protected activity. "In the absence of a specific showing of constitutionally valid reasons to regulate their speech, students are entitled to freedom of expression of their views." Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 511 (1969). "While students' rights are not necessarily co-extensive with the rights of adults in other settings, their expressions will generally be protected as long as they do not 'materially and substantially interfere with the requirements of appropriate discipline' or collide with the rights of others." Qvyjt v. Lin, 932 F. Supp. 1100, 1108-09 (N.D. Ill. 1996) (quoting Tinker, 393 U.S. at 513 (1969)). The complaint states Plaintiff was "speaking freely about Ahmed's selective persecution due to [the female student's] parents' wealth." (Doc. #32, ¶189). Plaintiff fails to provide further factual enhancements, as required by Zink, to demonstrate that Plaintiff engaged in protected speech. 783 F.3d at 1098. Plaintiff has failed to sufficiently plead the first element of a First Amendment retaliation claim.

Second, Plaintiff must plausibly plead "that the defendant took adverse action against him that would chill a person of ordinary firmness from continuing in the activity." Scheffler, 743 F.3d at 621. The complaint alleges he was charged "with additional code of conduct

violations" due to the free speech. (Doc. #32, ¶189). A code of conduct violation, if motivated by "speaking freely," may have the effect of chilling the speech of a person of ordinary firmness at the University. However, because the complaint fails to sufficiently plead Plaintiff engaged in protected speech, the Court is unable to reach a conclusion as to the second element.

Third, Plaintiff must demonstrate "the adverse action was motivated in part by [Plaintiff's] exercise of his constitutional rights." Scheffler, 743 F.3d at 621. "[A] *Bivens* (or § 1983) plaintiff must show a causal connection between a defendant's retaliatory animus and subsequent injury in any sort of retaliation action." Hartman v. Moore, 547 U.S. 250, 259 (2006); see also Osborne v. Grussing, 477 F.3d 1002, 1005 (8th Cir. 2007). The defendant's retaliatory motive must be a but-for cause of the retaliation; a plaintiff cannot recover if the defendant would have taken the same adverse action even in the absence of the improper motive. Osborne, 477 F.3d at 1006 ("Plaintiff … could not recover by proving that his First Amendment-protected [action] played a 'substantial part' in the [defendant's] decision not to renew his contract, if the [defendant] then proved 'by a preponderance of the evidence that it would have reached the same decision ... even in the absence of the protected conduct.'"). Thus, to state a First Amendment retaliation claim, Plaintiff must plausibly plead that his speech was a substantial or motivating factor in Defendant's alleged retaliation.

In the Amended Complaint, Plaintiff alleges that because he spoke freely to Defendant Young, he was charged with additional code of conduct violations. Though not specified in Count 9, the Court infers that Plaintiff is referring to the conversation that occurred on October 9, 2012, during which Plaintiff asserts he "challenged Defendant Young's 'vendetta' against him as being because [the female student's] parents are significant donors to the University." (Doc. #32, ¶69). Plaintiff fails to state which additional violations were asserted against him due to this

exercise of free speech. On October 19, 2012, Plaintiff claims "Clark Jones requested clarification as to exactly what allegations are being made and Defendant Young asserted that only three were being made." Id. at ¶70. Then, Plaintiff claims that on November 12, 2012, more than a month after the conversation challenging Defendant Young's alleged vendetta, "Defendant Young sends out another notice of additional violations" asserted against Plaintiff. Id. at ¶79. Plaintiff has failed to plead sufficient allegations that would permit the court "to infer more than the mere possibility of misconduct." Ritchie, 630 F.3d at 717. Consequently, Plaintiff has not met the standard required to satisfy the third element of a retaliation claim.

The Court finds that Plaintiff has not sufficiently pleaded that he engaged in protected speech and, consequently, is unable to satisfy the three required elements for a First Amendment retaliation claim. Therefore, Count 9 is dismissed.

## I. Count 10: Vacatur of the Arbitrator's Decision (Against Defendants Deaton, Lucas and Young)

Plaintiff seeks to vacate the "Arbitrator's decision" in accordance with "the Missouri Arbitration Act, Mo. Rev. Stat. 435.350.1." (Doc. #32, ¶195). Plaintiff argues "[t]he decision should be vacated because the Student Conduct Panel improperly placed the burden on Ahmed to prove his innocence, but failed to provide him with the evidence requested and needed to prove his innocence." Id. at ¶196. Plaintiff further states "[t]he hearing failed to involve someone competent to interpret the binding authority concerning student conduct proceedings." Id. at ¶197. Defendants Deaton, Lucas and Young state the Missouri Arbitration Act, properly found at Mo. Rev. Stat. 435.405.1, does not apply to this action because an arbitration is a matter of contract, and there was no agreement between the parties to arbitrate this matter.

"In the Eighth Circuit, arbitration is required if a valid agreement exists and the dispute falls within the scope of the agreement." Casteel v. Clear Channel Broad., Inc., 254 F. Supp. 2d

1081, 1087 (W.D. Ark. 2003) (citing <u>Lyster v. Ryan's Family Steak Houses, Inc.</u>, 239 F.3d 943, 945 (8th Cir. 2001)). "Arbitration is a matter of contract, and a party cannot be required to arbitrate a dispute that it has not agreed to arbitrate." <u>Kohner Props., Inc. v. SPCP Grp. VI, LLC</u>, 408 S.W.3d 336, 343 (Mo. Ct. App. 2013) (quoting <u>Dunn Indus. Group, Inc. v. City of Sugar Creek</u>, 112 S.W.3d 421, 435-36 (Mo. banc 2003)).

In the Complaint, Plaintiff fails to assert that Defendants Deaton, Lucas, and Young agreed to submit the dispute brought before the student disciplinary panel for arbitration. Without an agreement between the parties, the disciplinary panel's decision did not establish a decision capable of being vacated pursuant to the Missouri Arbitration Act. Even though the disciplinary proceedings may resemble arbitration, proceedings under the University's rules do not constitute arbitrations in the absence of a valid agreement to arbitrate the dispute. <u>See</u> <u>Kritzer v. Curators of Univ. of Missouri</u>, 289 S.W.3d 727, 732-34 (Mo. App. W.D. 2009) (holding University grievance committee hearing was not an arbitration proceeding, even though hearing had significant characteristics of arbitration without substantial evidence to support an arbitration agreement).

Therefore, without a valid arbitration agreement, Plaintiff cannot state a claim against Defendant Deaton, Lucas, and Young to vacate an arbitration decision that does not exist. Plaintiff's claim to vacate an Arbitrator's decision in Count 10 is dismissed.

### J. Count 11: Estoppel and Reliance (Against Defendants Deaton, Lucas and Young)

Plaintiff alleges Defendants Deaton, Lucas, and Young are liable to Plaintiff for promissory estoppel because Defendants "made express and implied promises and representations." (Doc. #32, ¶¶202, 203). Defendants claim Plaintiff fails to plead a plausible claim of a promise and a plausible claim of reliance on a promise.

To state a promissory estoppel claim, Plaintiff must allege: "(1) a promise; (2) on which a party relies to his or her detriment; (3) in a way the promisor expected or should have expected; and (4) resulting in an injustice that only enforcement of the promise could cure." Tension Envelope Corp. v. JBM Envelope Co., No. 14-567-CV-W-FJG, 2015 WL 893242, at *4 (W.D. Mo. Mar. 3, 2015); Ariel Preferred Retail Group, LLC v. CWCapital Asset Mgmt., 883 F. Supp. 2d 797, 830 (E.D. Mo. 2012). Under the first requirement, "it is required that a promise be as definite and delineated as an offer under contract law." Freitas v. Wells Fargo Home Mortgage, Inc., 703 F.3d 436, 440 (8th Cir. 2013). "If a party is unable to establish any one of the four elements, his claim fails." City of St. Joseph, Mo. v. Sw. Bell Tel., 439 F.3d 468, 477 (8th Cir. 2006). "[P]romissory estoppel is not a favorite of the law, and each element must clearly appear and be proven by the party seeking its enforcement." Glenn v. HealthLink HMO, Inc., 360 S.W.3d 866, 877 (Mo. Ct. App. 2012). "The doctrine of promissory estoppel is to be applied 'with caution, sparingly and only in extreme cases to avoid unjust results.'" City of St. Joseph, 439 F.3d at 477 (citing Kearney Commercial Bank v. Popejoy, 119 S.W.3d 143, 146 (Mo. Ct. App. 2003)).

In Count 11, Plaintiff asserts "Defendant Deaton's, Lucas's, and Young's statements directly to Plaintiff and to the students that they would be treated fairly in student conduct proceedings constitute representations and promises that the Defendants should have reasonably expected to induce action or forbearance by [the Plaintiff]." (Doc. #32, ¶200). Plaintiff also asserts "[Plaintiff] relied to his detriment on . . . express and implied promises and representations made by the Defendants." (Doc. #32, ¶202). Although Plaintiff mentions "representations and promises," he fails to set forth a promise that is "definite and delineated as an offer under contract law." Freitas, 703 F.3d at 440. Plaintiff provides no facts related to what

statements Defendants made, when Defendants made such statements, which Defendants made such statements, or what statements were made to Plaintiff in particular.

The pleading standard set forth in Iqbal does not require detailed factual allegations, but the standard does require "naked assertions" receive some "further factual enhancement." Without more, the Plaintiff has not met the first element necessary to establish promissory estoppel, and this Court need not go further. Count 11 is dismissed.

### K. Count 12: Injunctive and Declaratory Judgment (Against All Defendants)

In Plaintiff's "Last Count"—Count 12—Plaintiff seeks a declaratory judgment and injunctive relief from all defendants. The Court addresses Plaintiff's requests in turn.

#### a. Declaratory Judgment

First, Plaintiff seeks a declaratory judgment against all defendants pursuant to the Declaratory Judgment Act, codified at 28 U.S.C. § 2201, asking for a declaration that the University must take different actions regarding the outcome, permanency and future handling of Plaintiff's formal record. (Doc. #32, ¶210). Defendants University, Young, Deaton, and Lucas argue that since Plaintiff fails to state a claim elsewhere in his complaint, Plaintiff cannot use the Declaratory Judgment Act as an independent basis for jurisdiction.

"[T]he Declaratory Judgment Act . . . does not provide an independent basis for federal jurisdiction." Zutz v. Nelson, 601 F.3d 842, 850 (8th Cir. 2010) (citing Victor Foods, Inc. v. Crossroads Econ. Dev., 977 F.2d 1224, 1227 (8th Cir.1992)). "[I]t is well settled that the declaratory judgment statute is strictly remedial in nature and does not provide a separate basis for subject matter jurisdiction." First Fed. Sav. & Loan Ass'n of Harrison, Ark. v. Anderson, 681 F.2d 528, 533 (8th Cir. 1982). "A successful action for declaratory judgment requires a viable underlying cause of action." Essling's Homes Plus, a Minn. Corp. v. City of St. Paul, a Minn.

<u>Corp.</u>, 356 F. Supp. 2d 971, 984 (D. Minn. 2004). "A declaratory judgment is itself a remedy, not a cause of action." <u>Sprint Commc'ns Co., L.P. v. Crow Creek Sioux Tribal Court</u>, No. 4:10-CV-04110-KES, 2015 WL 1508907, at *6 (D.S.D. Apr. 1, 2015); <u>See also</u> <u>Buck v. Am. Airlines, Inc.</u>, 476 F.3d 29 n.3 (1st Cir. 2007) (stating that although the plaintiffs allege "'declaratory judgment' as a cause of action . . . 28 U.S.C. § 2201(a), creates a remedy, not a cause of action.").

As discussed throughout this Order, Plaintiff's complaint fails to state a plausible claim upon which relief may be granted against Defendants University, Deaton, Lucas and Young. This necessarily means Plaintiff's declaratory judgment claim fails because Plaintiff has no underlying claims against these parties, and the Declaratory Judgment Act does not provide an independent basis for jurisdiction. <u>See</u> <u>Zutz</u>, 601 F.3d at 850. Because Plaintiff cannot bring a claim based on the Declaratory Judgment Act alone, Plaintiff's claim for declaratory judgment against Defendants University, Deaton, Lucas and Young is dismissed.

### b. Injunctive Relief

Second, Plaintiff requests "a temporary restraining order, a preliminary injunction and a permanent injunction enjoining Defendants" from various actions including maintaining Plaintiff's expulsion and barring Plaintiff from campus. (Doc. #32, ¶211). This issue was addressed by the Court in its July 30, 2015, Order, where Plaintiff's Motion for Temporary Restraining Order seeking re-admission and re-employment with the University was denied. (Doc. #64).

To succeed in a request for a temporary restraining order ("TRO") or a preliminary injunction, the Eighth Circuit requires the movant to show and the Court to consider four factors, including "the threat of irreparable harm to the movant." <u>Amos v. Higgins</u>, 996 F. Supp. 2d 810,

812 (W.D. Mo. 2014) (citing Bank One, Utah v. Guttau, 190 F.3d 844, 847 (8th Cir. 1999)) (citing in turn Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981)). "[A] failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." Novus Franchising, Inc. v. Dawson, 725 F.3d 885, 893 (8th Cir. 2013). "A district court has broad discretion when ruling on a request for preliminary injunction, and it will be reversed only for clearly erroneous factual determinations, an error of law, or an abuse of its discretion." Id. "The standard for granting a permanent injunction is essentially the same as for a preliminary injunction, except that to obtain a permanent injunction the movant must attain success on the merits." Amos, 996 F. Supp. 2d at 812 (citing Bank One, Utah, 190 F.3d at 847) (citing in turn Dataphase, Inc., 640 F.2d at 114).

As explained in the Court's July 30, 2015, Order, Plaintiff's injunctive relief request failed to show irreparable harm because it "span[ned] an extensive time, a prior lawsuit and a six month delay in service . . . and Plaintiff ha[d] not shown that he could not enroll in a different university to complete his degree program." (Doc. #64). Plaintiff was previously expelled from the University in 2012, and he unsuccessfully sued and sought injunctive relief in state court. Salau v. Deaton, 433 S.W.3d 449 (Mo. App. W.D. 2014). In this case, Plaintiff seeks the same relief. However, Plaintiff has not shown that he could not enroll in a different university to complete his degree program, or that he could not be employed elsewhere.

As a result, similar to Plaintiff's prior unsuccessful requests, Plaintiff does not show irreparable harm, and his requests for a TRO and preliminary injunction fail. Plaintiff's claim for a permanent injunction is similarly barred because all of Plaintiff's claims have been dismissed, which necessarily means he cannot attain success on the merits. Count 12 seeking injunctive relief is dismissed.

## IV. CONCLUSION

The Court finds that Plaintiff Ahmed Salau has failed to state claims against Defendants University, Brady Deaton, Mark Lucas and Donnell Young. Plaintiff is directed to show cause on or before October 22, 2015, why Plaintiff's claims against Defendants Kingsbury and Spalding should not be dismissed for failure to state a claim. It is further

**ORDERED** that The Curators of the University of Missouri's Motion to Dismiss Defendant Identified as University of Missouri – Columbia (Doc. #30) is GRANTED;

**ORDERED** that The Curators of the University of Missouri's Motion to Dismiss Defendant Identified as University of Missouri – Columbia (Doc. #48) is GRANTED;

**ORDERED** that Defendant Mark Lucas' Motion to Dismiss Amended Complaint (Doc. #55) is GRANTED;

**ORDERED** that Defendant Donnell Young's Motion to Dismiss Amended Complaint (Doc. #57) is GRANTED; and

**ORDERED** that Defendant Brady Deaton's Motion to Dismiss Amended Complaint (Doc. #71) is GRANTED.


/s/ Stephen R. Bough
STEPHEN R. BOUGH, JUDGE
UNITED STATES DISTRICT COURT

DATE: October 8, 2015